[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action is a petition seeking habeas corpus relief from allegedly unlawful confinement resulting from a judgment of conviction, after a jury trial, for illegal possession of cocaine with intent to sell by a non-drug-dependent person, in violation of General Statutes § 21a-278(b), and illegal possession of marijuana with intent to sell, in violation of General Statutes § 21a-277(b), for which judgment the petitioner received a total, effective sentence of fifteen years incarceration, execution suspended after ten years, probation five years.
The petitioner's first criminal trial on these charges resulted in a deadlocked jury and a mistrial. The judgment of conviction upon retrial was affirmed on appeal, State v. Harvey,217 Conn. App. 171 (1992).
In his amended petition, the petitioner contends that his confinement is unlawful because his trial counsel, Attorney Donald Freeman, rendered ineffective assistance at his criminal trial in twenty-seven ways. Several of these claims were withdrawn before the taking of evidence at the habeas hearing. Also, in his posttrial brief the petitioner declined to argue, analyze, or even mention several of the remaining claims, and the court regards these unargued claims as abandoned. The surviving claims of ineffective assistance are that Freeman failed to introduce a transcript of the testimony of Detective Battistone from the petitioner's first trial at the retrial; that he failed to object to testimony concerning the petitioner's postarrest silence; that he failed to call as a defense witness Kermit Francis; and that he failed to object to testimony regarding previous complaints of drug activity at the same location where the petitioner was purportedly possessing narcotics with intent to sell.
The Appellate Court summarized the facts which the jury at the CT Page 4187 petitioner's criminal trial could reasonably have found as follows:
"On August 22, 1989, at approximately 8:30 p.m., Detectives Anthony Battistone and Christopher Lyons of the Hartford police department received a telephone call from an unidentified informant indicating that an individual named Les, who was dressed all in white, was selling narcotics out of a parked car in the area of 139 Homestead Avenue in Hartford. In response to the telephone call, plain clothes detectives in an unmarked car drove to the area indicated in the telephone call to conduct a surveillance.
The officers observed four individuals attempting to wave down passing cars. They further observed the defendant, who was dressed all in white, enter an apparently abandoned black Volvo and remove small plastic packages from the backseat, hand the packages to various individuals, whom the other four had stopped, receive money in exchange, and place the money in his pocket. At this point, the officers arrested the defendant. A search of the vehicle produced eleven blue plastic bags containing a substance later identified as marihuana, and four clear plastic bags containing a white powder later identified as cocaine. A search of the defendant's person produced $561." Id., 173.
An examination of the trial transcript reveals the following additional information. Officer Pasqurell testified that he searched the other persons arrested along with the petitioner and found no narcotics or money on them (Petitioner's Exhibit A, p. 75). Detective Lyons, who arrested the petitioner for the charges underlying the criminal trial, testified that, after arrest, the petitioner made no statement regarding the charges against him before being advised of his Miranda rights nor after such advisement (Petitioner's Exhibit A, pp. 157 and 158). Lyons also testified that he had responded to the same location as the petitioner's arrest on previous occasions to investigate narcotics activity (Petitioner's Exhibit A, pp. 343 and 344). Similar information was also related at the petitioner's criminal trial by Detective Perotta (Petitioner's Exhibit B, p. 518). Freeman never objected to the admission of these lines of inquiry.
Our Supreme Court has adopted the two-pronged Strickland test for evaluating ineffective assistance claims; Ostolaza v. Warden,26 Conn. App. 758, 761 (1992). That test requires that the petitioner demonstrate, by a preponderance of the evidence, both that his counsel's performance was substandard and that there exists a reasonable probability that, but for counsel's CT Page 4188 deficiencies, the outcome of the proceedings would have been different. Id.
If it is easier to dispose of an ineffective assistance claim on the ground of insufficient prejudice, the habeas court need not address the question of counsel's performance, Pelletier v. Warden,32 Conn. App. 38 (1993), p. 46. Because the court concludes that an examination of the prejudice component of the Strickland test is dispositive as to this issue, the court proceeds to address that; issue directly.
In order to satisfy the second or prejudice prong of theStrickland test, the petitioner must prove, by a preponderance of the evidence, that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different, Levine v. Manson, 195 Conn. 636 (1985), p. 640. Reasonable probability means a probability sufficient to undermine confidence in the verdict, Bunkley v. Commissioner,222 Conn. 444 (1992), p. 454; that is, the petitioner must show that there is a reasonable probability that he remains burdened by an unreliable determination of guilt, Id.
If the testimony of the police officers was credible, that evidence clearly established the guilt of the petitioner. Lyons and Battistone testified at the criminal trial that after driving to 139 Homestead Avenue, Hartford, they established a surveillance position and began observing a group of persons which included the petitioner who was distinctively attired. They observed members of the group flag down passing vehicles, saw the petitioner enter a dilapidated, black Volvo which was parked at the end of a driveway and across the sidewalk, retrieve small items from the rear of the Volvo, and saw him exchange these items for other small items obtained from the motorists who had stopped. No one entered the Volvo or handled the objects except for the petitioner. The officers arrested the group members, discovered several packets of cocaine and marijuana in the Volvo, and found $561 on the; petitioner's person.
The defense theory at the criminal trial was that the petitioner had not participated at all in the drug trafficking, had no connection with contraband seized, and was merely in the area engaged in innocuous activity. Given the diametrically opposed versions of events, the defense attempted to show that Lyons and Battistone were actually parked in a location farther from the scene and in no position to observe what they claimed to have seen. CT Page 4189 At the second trial, the petitioner testified that he acknowledged being the operator of the Volvo and possessing the $561, but he denied almost every other aspect of Lyons's and Battistone's testimony (Petitioner's Exhibit B, pp. 821 ff). Thus, the outcome of the case hinged on the believability of the detectives and the petitioner.
The petitioner first faults Freeman for failing to offer into evidence the former testimony of Battistone (Petitioner's Exhibit E). The court has reviewed all the transcript exhibits and finds that Freeman used Battistone's former testimony extensively in impeaching Battistone at the retrial (Petitioner's Exhibit A, pp. 401 ff). Battistone admitted having given the previous testimony at the petitioner's first trial which was, in some respects, inconsistent with his testimony on direct examination at the retrial. Freeman's examination of Battistone thoroughly brought out this inconsistency. All the pertinent information from, Battistone's former testimony was put before the jury at the retrial.
It is doubtful that the transcript of the former testimony would have been admissible at the retrial because Battistone never denied making the earlier, inconsistent statement. Usually, use of extrinsic evidence of prior inconsistent statements is admissible only if the witness denies making the statement, State v. Daskan,10 Conn. App. 50, 54 (1987); G R Tire Distributors, Inc. v.Allstate Ins. Co., 177 Conn. 58, 61 (1979).
Even if admissible, the transcript would have been merely cumulative of Battistone's testimony at the later trial because of Freeman's thorough and detailed examination of the witness using; that previous testimony. The court finds that the absence of the transcript, even if admissible, was inconsequential under these circumstances.
The petitioner next argues that Freeman was ineffective by failing to object to evidence of the petitioner's postarrest silence. The prosecution's use of an accused's postarrest silence to impeach credibility is objectionable as being against the state rules of evidence, State v. Leecan, 198 Conn. 517, 521 (1986), and, if such evidence pertains to silence after Miranda warnings have, been given, it is also objectionable on constitutional grounds,Doyle v. Ohio, 426 U.S. 610 (1976); State v. Esposito,223 Conn. 299, 319 (1992). CT Page 4190
Freemen testified at the habeas hearing that he intentionally declined to object to this particular line of questioning because it allowed the defense the beneficial opportunity to rebut the officers' testimony, that the petitioner made no postarrest comments, with the petitioner's testimony that he did, indeed, inquire of the officers as to the basis for his arrest, that he denied knowledge of ownership of the narcotics, and that he overheard a coaccused admit to ownership of the same (Petitioner's Exhibit B, p. 875). Under the facts of this case, the court finds that the petitioner has failed to prove that Freeman's decision in this regard harmed him rather than helped him. The court should note the petitioner produced no legal expert's opinion as to any prejudicial impact of the admission of such evidence.
The petitioner also argues that Freeman's failure to call Kermit Francis as a defense witness amounted to ineffective assistance. The petitioner asserts that Francis, a coaccused, could have testified that money was seized from his person, contrary to the testimony of the detectives. Presumably, such testimony would have been useful to rebut the police version and to eliminate any inference of guilt derivable from the fact that the only member of the group in possession of money at the scene was the petitioner.
Francis was not a witness at the criminal trial. Francis was not a witness at the habeas hearing either. No evidence as to Francis availability or willingness to testify at the petitioner's retrial was introduced. No evidence of any statements attributable to Francis on this point was offered. Given this lack of evidence, the court finds that the petitioner has failed to prove that Francis would have been a beneficial and available witness for the defense at his criminal trial. To find otherwise would be pure conjecture.
Lastly, the petitioner submits that Freeman rendered ineffective assistance by failing to object to testimony concerning previous phone calls to the police complaining of narcotics activity near 139 Homestead Avenue. None of this testimony indicated that the previous phone calls involved the petitioner. The testimony was adduced to demonstrate that the investigating officers were familiar with the location, and this familiarity was relevant to the efficacy of the surveillance position which was a focal issue in the case.
The gist of the petitioner's argument is that because the CT Page 4191 previous complaints referred to "the address where Petitioner lived the prejudicial impact of this testimony could have been considerable" (Petitioner's posttrial brief, p. 7). The court finds that, because no evidence directly connected the complaints to the petitioner, any impact was minimal. The trial court instructed the jury not to go outside the evidence or resort to guesswork or mere suspicion in reaching its verdict (Petitioner's Ex. C, p. 957). It is presumed that the jury followed the trial court's instructions unless the contrary is evident, State v.Ronleau, 204 Conn. 240, 254 (1987).
The court finds that the petitioner has failed to meet his burden of proving, by a preponderance of the evidence, the prejudice prong of the Strickland standard, i.e. that, but for Freeman's allegedly substandard representation, there exists a reasonable probability that the result of the petitioner's criminal trial would have been different.
For these reasons, the petition is dismissed.
Sferrazza, J.